[Filed October 25, 1887.]

| 15 | 351 |
|----|-----|
| 38 | 164 |

# H. W. DICKEY, RESPONDENT, v. D. V. B. HENARIE, APPELLANT.

LEASE, UNRECORDED—NOTICE OF TERMS OF.—A lessee of a cigar store in a building which contained, also, a saloon separate from the cigar store, who by the terms of his lease had the exclusive privilege of selling cigars and tobacco in the saloon, gave notice at a sheriff's sale by an attaching creditor of his lessor, prior to the sale, but subsequent to the levy of the attachment, that he had a sublease of the cigar store. *Held*, (1) That when he stated that he had a sublease of the cigar store, the purchaser had the right to accept his statement, and was not bound to inquire further into the terms or extent of the lease. (2) It was immaterial, when he undertook to state what the lease was, whether or not the contract was in writing. (3) That it could not be inferred from his statement that he had a lease of the cigar store; that the lease extended to other parts of the building, and the purchaser was not thereby put upon inquiry as to other parts. (4) That it was misleading to instruct the jury in such case that when a party gives notice that his contract was in writing, "that was notice of all that the writing contained," and that if the purchaser or his agent had been notified at the time of the sale that there was a lease, and had reasonable grounds to believe that it was in writing, they were bound to inquire into the contents of the lease, and the law bound them by its contents.

IMPLIED NOTICE—DUTY OF COURT TO INSTRUCT AS TO.—It is error for a court to submit to the jury, as a question of fact, "what a reasonable or prudent man would have done towards finding out the rights of the sub-lessee." The duty of the judge was to tell the jury what the duty of the purchaser was, in case they found that he had notice of the rights of the sub-lessee.

ATTACHING CREDITOR—NOTICE TO.—Under section 150 of Hill's Code, an attaching creditor is deemed, and he occupies the same position as a purchaser in good faith for a valuable consideration. And an instruction, "it is sufficient if defendant was notified of the adverse claim any time before sheriff's sale," *held*, to be error.

APPEAL from Multnomah County.    Reversed.

*Gearin & Gilbert*, for Appellant.

*T. A. Stephens*, and *F. A. E. Starr*, for Respondent.

THAYER, J.—The respondent commenced an action against the appellant in the Circuit Court of Multnomah County, to recover damages in consequence of being deprived of an alleged right to sell cigars and tobacco in the Argonaut Saloon, in the city of Portland.

It appears that one Edward Martin owned a leasehold interest in a certain portion of "Green's Building," situated at the northeast corner of First and Alder streets in said city.    The portion

of said building was the store formerly occupied by A. I. Weiler & Co., and from whom said Martin leased. That the said Martin, on the twentieth day of March, 1886, sublet to the respondent the north front portion of said store for a cigar stand; the other portion thereof was used by him, said Martin, for the said saloon. The letting by Martin to respondent was for the term of two years, and the lease contained a clause "that in consideration of the covenants therein contained upon the part of the said H. W. Dickey, to be kept and performed by him, the said Edward Martin leased, demised, and let unto him all of that certain portion of what was known as 'Green's Building,' then being fitted up and occupied as a cigar stand, being the north front portion of said store, together with the exclusive right and privilege to sell, vend, and have sold, in and upon the entire premises formerly occupied by the firm of A. I. Weiler & Co., cigars and tobacco, during the entire term of the lease of said premises from the said firm to the said Edward Martin." That on the fifth day of May, 1886, the appellant, in an action against said Edward Martin, attached his interest in the entire premises; that at the time of the attachment, the respondent was in possession of the cigar store; that it fronted upon the street, and was partitioned off from the saloon, but communicated with it by means of a small window which could be opened and closed.

The sheriff, when he levied the attachment, closed up the saloon, and it remained closed until the sheriff's sale on the twenty-fourth day of October, 1886, at which time it was bid in by one Conroy for appellant. The respondent during the time the saloon was closed remained in possession of the cigar stand the same as before the attachment. The appellant, after purchasing Martin's interest in the leasehold estate, again opened and continued to carry on the saloon, but refused to recognize the respondent's right "to sell, and have sold," cigars and tobacco, as provided in his lease from Martin, which was the grievance complained of.

The case was tried by jury, who returned a verdict in favor of the respondent for the sum of five hundred dollars, upon which the judgment appealed from was entered.

A question seems to have been made at the trial, as to whether the appellant was legally required to allow the respondent such privilege claimed by him, in regard to selling cigars and tobacco in the saloon. The latter's lease from Martin was in writing, but not upon record, and a question arose as to whether the appellant, or his agents, had any notice of there being any such lease. In order to prove such notice, the respondent testified at the trial that at the time of the sheriff's sale he gave notice to the sheriff, and the latter to all the by-standers, including the appellant's agents, that he had a sub-lease of the cigar store. The sheriff also testified to the same effect. This seems to have been all the testimony there was concerning notice. There was evidence that one O'Brien, an agent of the appellant, knew prior to the attachment that the respondent had the exclusive right of furnishing all the cigars sold in the saloon, but it was not contended that the said agent was informed that the respondent had the lease from Martin, nor that the appellant, or any of appellant's agents, had any such information.

The court gave the following charge to the jury: "(1) The rule of law is substantially this: When a party gives notice to another and says that his claim is in writing, that is notice of all that the writing contains. (2) I submit this question, whether the manner in which this notice was given would lead defendant to know that a writing existed. (3) If you find general notice of claim and possession of part of the premises, then you should find whether a reasonable man or a prudent man would have inquired further. (4) The right to sell cigars in the main saloon is as much a part of the grant as the exclusive possession of the cigar store proper. (5) It is not necessary that the defendant should have had notice of the plaintiff's claim at the time of the attachment. It is sufficient that he was notified prior to the sheriff's sale. (6) If Conroy, the purchaser, and Henarie and O'Brien, his agents, had notice at the time of the sale by the sheriff, that Dickey claimed a lease of the cigar store in fact, I leave it. to you as a question of fact whether a reasonable man would not inquire of Dickey as to the terms and conditions of the lease. It was not necessary that they should

have read the lease, but if they had been notified at that time
that there was a lease, and had reasonable ground to believe that
it was in writing, they were bound to inquire into its contents,
and the law bound them thereby."

To each of these instructions the appellant duly objected and
excepted.

The questions in the case arise out of the court's instructions.
It seems to me that they are all faulty, unless it be the fourth.

The first one, that when a party gives notice to another, and says
that his claim is in writing, that is notice of all that the writing
contains, cannot be correct.    Saying that the claim was in writ-
ing might make it the duty of the person to whom it was said
to inquire as to the contents of the writing, and cases might arise
where if such person failed to make the inquiry, he would be
deemed to have been guilty of a degree of negligence fatal to his
claim to be considered a *bona fide* purchaser.   (*Williamson* v.
*Brown*, 15 N. Y. 354.)   In this case, however, the respondent
stated what he had, a sublease of the cigar store.   What more
could be inferred from that than what the words implied?
Would any one suppose that because he had a sublease of the
cigar store, he had also the exclusive right and privilege to sell,
vend, and have sold cigars and tobacco in the saloon?   Whether
the lease was in writing or not was of no consequence; he said
what it was, and the appellant could not have supposed it con-
tained anything more than what he said.   If he had said that
he had a claim to the premises, and that it was in writing, it
would then have behooved the appellant to inquire regarding
the contents of the writing—to have sought an inspection of it;
but under the circumstances, he had no occasion to make any
inquiry.   The respondent stated what he had, and the appellant
accepted the statement.   If a person were about to purchase a
farm, and an occupant were to say that he had a lease of the
orchard, the purchaser would not be informed that the occupant
also had a right to the meadow or wood land, or have informa-
tion sufficient to put him upon inquiry as to any such right.
Good faith in such a case demands that a party state fairly and
fully the extent of his claim; otherwise, persons dealing legiti-

mately in regard to the property would be liable to be misled to their prejudice.

The second instruction was misleading. It left the jury to infer that if the manner in which the notice was given led the appellant to know that a writing existed, it would make him chargeable with all it contained. Such might have been the case had the respondent not have said what his right was; but when he said that he had "a sublease of the cigar store," he might reasonably be supposed to have stated the extent of his right. The statement tended to negative any right to the saloon.

The third instruction was also misleading. I cannot see that a reasonable or prudent man, having general notice that the respondent claimed and had possession of the cigar stand under the circumstances of this case, should have inquired whether he had not been granted the right to vend cigars in the saloon, or any other right in regard to the saloon. The respondent made known his right, and the appellant had the right to suppose that he was claiming the extent of it. The court charged the jury that the right to sell cigars in the main saloon was as much a part of the grant as the exclusive possession of the cigar store proper. Conceding this, yet it does not follow that, because the respondent was vested with the latter right, he had also been granted the former. The fact that the cigar store was partitioned off from the saloon would, it seems to me, imply that the respondent's cigar business in that locality was circumscribed. In any event, that fact, in connection with the claim he interposed, would not incite any inquiry as to whether another and additional right had not been granted him, however reasonable or prudent a man he might be.

The form of the instruction, it seems to me, is objectionable. The jury were directed, if they found general notice of claim and possession of a part of the premises, to find whether a reasonable man or a prudent man would have inquired further, but were not informed as to the law upon the subject; nor do I think it should have been left to the jury as to whether a reasonable man or a prudent man would have inquired further in the event suggested. I think the court should have told the jury what the

appellant's duty was, in case they found the general notice of claim and possession of a part of the premises referred to in the charge, and not left them to speculate upon what a reasonable man or a prudent man would have done in the premises, and to draw their own inference as to the result of their finding.

The fifth instruction is in direct conflict with the provision of the statute upon the subject. Section 148 of the Civil Code provides, that "from the date of the attachment until it be discharged, or the writ executed, the plaintiff, as against third persons, shall be deemed a purchaser in good faith and for a valuable consideration of the property, real or personal, attached, subject to the conditions prescribed in the next section as to real property." This court, in *Boehreinger* v. *Creighton*, 10 Or. 42, held that under this provision, an attaching creditor without notice of a prior unrecorded deed of the property, made by the debtor in the writ to a third person, was not affected by such deed, and recognized the right of such creditor as attaching from the time of the levy, and as having priority over such deed where the creditor had not received notice of it prior thereto.

The sixth instruction stands upon the same footing as the others referred to as being faulty. The case will therefore have to go back for a new trial.

Judgment reversed, and new trial ordered