Argued July 10, affirmed September 30, 1919.

## DENNISON v. JOSSI.*

(184 Pac. 269.)

Mortgages—Reinstatement of Mortgage Satisfied by Mistake.

1. When the owner of two mortgages, intending to satisfy one, by mistake satisfies the other mortgage, he is entitled to have the mistake corrected and the mortgage reinstated, unless right of third parties would be prejudiced.

[As to when mortgage will be revived in case of being satisfied by mistake, see note in 5 Am. St. Rep. 703.]

Vendor and Purchaser—Mortgagee Satisfying Mortgage by Mistake has No Remedy Against Innocent Purchaser.

2. The owner of a mortgage who satisfied it by mistake is not entitled to have the mistake corrected and the mortgage reinstated as against the intervening rights of *bona fide* purchasers and encumbrancers.

Vendor and Purchaser—Rights of Bona Fide Purchasers and Encumbrancers Without Notice When Mortgage Erroneously Satisfied.

3. Where the owner of two mortgages through mistake satisfied one which he did not intend to satisfy, and after the satisfaction was indorsed on the record, the premises were disposed of and a subsequent mortgage given, *held,* that the last purchaser and the mortgagee took the same without any constructive notice, so that the mortgagee was not entitled to have the mortgage reinstated, the purchaser and subsequent encumbrancer having no actual notice.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 1.

By mistake John Dennison satisfied a mortgage owned by him, and upon discovery of his mistake

---

*On right to reinstatement of mortgage which has been released or discharged by mistake, see notes in 58 L. R. A. 788; 26 L. R. A. (N. S.) 816; 28 L. R. A. (N. S.) 825; L. R. A. 1917E, 1055.          REPORTER.

brought this suit for the purpose of reinstating and foreclosing the mortgage. There was a decree dismissing the suit and the plaintiff appealed.

On July 31, 1908, Chester A. Sheppard and his wife gave to John Dennison their promissory note for $750, payable on July 31, 1911, with interest at 8% per annum payable semi-annually; and, to secure the note, they also gave a mortgage on lot 25 in block 1 in Creston, Multnomah County, Oregon. This is the mortgage which Dennison satisfied by mistake and it is this encumbrance which he is seeking to have reinstated and foreclosed.

On the same date, July 31, 1908, Chester A. Sheppard and his wife gave another promissory note to John Dennison for $750 payable July 31, 1911, with interest at 8% per annum payable semi-annually; and the Sheppards secured this note by executing a mortgage on lot 5 in block 11 in Creston.

Both mortgages were witnessed by the same witnesses, acknowledged before the same notary public and both were presented for record at 4:41 P. M. on July 31, 1908. The instruments themselves are identical in all respects except that one covers lot 25 in block 1 while the other embraces lot 5 in block 11 in Creston and except that the former bears the number 22859, which appears to have been stamped upon it by the recording officer, while the latter is numbered 22858. The mortgage covering lot 5 is wholly recorded on page 474 in book 319 of the mortgage records for Multnomah County. Each page of this book is numbered at the top. Immediately to the right of and a little below page number 474 are the figures 22858, the number given by the recording officer to the mortgage on lot 5. Immediately below the figures 22858 are the words "Sheppard et ux. to Dennison";

and then follows a record of the mortgage on lot 5. Nearly the entire page is required for this instrument although there was enough of the page left to permit the recording of a small portion of the mortgage which relates to lot 25. The record of the mortgage covering lot 25, as in the case of the other mortgage, shows its identification number; for the figures 22859 appear first and then immediately below these figures are the words "Sheppard et ux. to Dennison"; and then follows a record of the mortgage covering lot 25. However, only six lines of this instrument appear on page 474 and the remainder was written on page 475. On the margin of page 475 and next to the record of the mortgage covering lot 25 is a writing signed by John Dennison which reads as follows:

"Full satisfaction of the within mortgage is hereby acknowledged this 30th day of June, 1909."

The mortgage on lot 5 had been paid and Dennison intended to satisfy that encumbrance; but for some reason he made a mistake and signed the writing which purports to satisfy the mortgage on lot 25. No payments, except one payment of interest, had been made on the note which was secured by the mortgage on lot 25. Dennison did not discover his mistake until on or about April 11, 1916, and on that date he caused to be made and he signed entries, one on the margin of page 474 and another on the margin of page 475, to the effect that the writing of June 30, 1909, was intended to apply to lot 5 but by mistake was entered on page 475.

On January 28, 1909, Sheppard and wife deeded lot 25 to J. Martin Pierson and wife; but the conveyance was not recorded until March 14, 1914. The grantors covenanted that they were the owners of the lot and

that the premises "are free from all encumbrances, except a certain mortgage of seven hundred fifty ($750) dollars drawing 8% interest, dated July 30, 1908, given to John Dennison, which said grantees assume and agree to pay."

By an instrument dated June 3, 1914, and recorded October 9, 1914, J. Martin Pierson and his wife deeded lot 25 to E. L. and C. L. Beadell. The grantors in this instrument covenanted that the property was "free from all encumbrances, except a certain mortgage of seven hundred fifty ($750) dollars drawing 8% per annum dated July 30, 1908, given to John Dennison which is past due one year and said grantees assume and agree to pay."

The Beadells and their wives transferred lot 25 to Clyde and Ludie McCoy by a deed dated October 6, 1915, and recorded October 9, 1915. This conveyance contains a covenant "that the said premises are free from all encumbrances except a certain mortgage of seven hundred and fifty ($750) dollars drawing 8% interest per annum dated July 30, 1908." The grantors also agreed to defend against all lawful claims and demands "save and except the above-mentioned mortgage."

By a warranty deed dated December 15, 1915, and recorded on that day the McCoys conveyed lot 25 to Frederick C. Blatch. The grantors covenanted that the property was free from all encumbrances and agreed to defend against the demands of all persons.

By a warranty deed dated December 16, 1915, and recorded December 17, 1915, Frederick C. Blatch conveyed lot 25 to W. B. Baugh. The grantor in this instrument covenanted that the premises were free from all encumbrances "except city liens now bonded."

On December 17, 1915, W. B. Baugh borrowed $1,000 from W. L. Boise, trustee, and, to secure the note given by him, he executed a mortgage on lot 25. This mortgage was recorded on December 17, 1915, the date of its execution.

By a warranty deed dated March 10, 1916, and recorded March 15, 1916, W. B. Baugh and his wife conveyed lot 25 to Mike Jossi. The grantors covenanted with the grantee in this deed that "the said premises are free from all encumbrances except mortgage of $1,000, which grantee assumes."

The trial court decided that Boise, as trustee, was an innocent mortgagee without notice and that Jossi was an innocent purchaser without notice.

AFFIRMED.

For appellant there was a brief over the names of *Mr. M. M. Mattheissen, Messrs. Wood, Montague & Hunt* and *Mr. P. P. Dabney,* with an oral argument by *Mr. Mattheissen.*

For respondents, Mike and Margaret Jossi, there was a brief over the names of *Messrs. Christopherson & Matthews* and *Mr. Grant B. Dimick,* with an oral argument by *Mr. Q. L. Matthews.*

For respondent, Whitney L. Boise, there was a brief over the names of *Mr. Frederick V. Holman* and *Mr. John T. McKee,* with an oral argument by *Mr. Holman.*

For respondent, Ethelyn C. Sheppard, there was a brief prepared and presented by *Mr. Chester A. Sheppard.*

HARRIS, J.—The mistake made by Dennison was, either wholly or in part, the result of his own indi-

vidual negligence. It is possible that the recording officer who prepared the entry and attested Dennison's signature to the satisfaction of the mortgage shared in the negligence; but whether he did or not is immaterial as between Dennison and defendants Boise and Jossi. The note which was secured by the mortgage on lot 5 was paid and after it was paid Dennison went to the courthouse for the purpose of satisfying the mortgage which covered lot 5. Dennison testified that he "went in the courthouse and laid down the mortgage" and "the man took the book and he told me where to sign and I signed there." While it is not necessary to decide whether the mortgage which Dennison took to the courthouse was the one covering lot 25 or the one covering lot 5 yet there are a number of circumstances from which it can be argued that the recording officer was shown the mortgage on lot 25. There is an indorsement on the back of the original instrument, covering lot 25, showing that it was recorded on page 474 of volume 319. The whole of the mortgage on lot 5 appears on that page and only a small part of the mortgage on lot 25 is there shown; and hence there is room for the argument that the practiced eye of the recording officer did not, when he turned to page 474, overlook the record of the mortgage on lot 5. If the officer observed that page 474 contained the record of the other mortgage it is possible that he was guided by the number stamped on the back of the instrument and written on the record as well as by the description of the mortgaged property. Dennison was negligent, however, even though he took the mortgage on lot 5 to the courthouse; but he was still more negligent if he showed the recording officer the mortgage on lot 25.

1–3. When the owner of two mortgages intends to satisfy one but by a mistake satisfies the other mortgage he is entitled to have the mistake corrected and the mortgage reinstated unless the rights of third parties will be prejudiced: 27 Cyc. 1433. The same rule that measures the rights of Jossi also determines the rights of Boise. If Jossi was a purchaser for value in good faith and without notice of Dennison's equity then he is entitled to prevail; and so, too, Boise as mortgagee is entitled to protection if he took a mortgage on the lot in good faith and without notice: 19 R. C. L. 409; *Lowry* v. *Bennett,* 119 Mich. 301 (77 N. W. 935). It is conceded that neither Boise nor Jossi had actual knowledge of the mistake made by Dennison; and, therefore, we must inquire whether these two defendants had constructive knowledge of the plaintiff's equity.

Counsel for the defendants rely, among other precedents, upon *Larzelere* v. *Starkweather,* 38 Mich. 96, 107, where it is said that—

"There are cases which go very far in extending the doctrine of laches in applying the rule of constructive notice. We think, however, the better and certainly the safer rule to be that a mere want of caution is not sufficient,—not that he had incautiously neglected to make inquiries, but that he had designedly abstained from making inquiry for the very purpose of avoiding knowledge."

It is not necessary to determine whether the language just quoted should be applied in its full literal meaning. Nor do we find it necessary to discuss the reasoning employed in *Raymond* v. *Flavel,* 27 Or. 219, 241 (40 Pac. 158); but for the purpose of the controversy presented here it is sufficient to follow the language found in *McDougal* v. *Lame,* 39 Or. 212, 214 (64

Pac. 864), where it is said in substance that a party is chargeable with notice of an outstanding equity held by a third person if, in the same circumstances, an ordinarily prudent man would have made inquiry and if such inquiry upon being prosecuted with ordinary diligence would have resulted in knowledge of the equity: *Jennings* v. *Lentz,* 50 Or. 484 (93 Pac. 327, 29 L. R. A. (N. S.) 584). None of the precedents express the rule in language more favorable to the plaintiff than does the opinion in *McDougal* v. *Lame;* and yet if the rights of these litigants are measured by this rule of ordinary diligence, the test that is the most favorable to the plaintiff, it will nevertheless be found that Dennison cannot prevail.

Before making the mortgage Boise examined an abstract showing the condition of the record title. This abstract included the mortgage from the Sheppards to Dennison and the satisfaction of that mortgage, as it was recorded on June 30, 1909, the deed from the Sheppards to the Piersons, and the conveyance from the Piersons to the Beadells. The deed from Blatch to Baugh did not appear in the abstract but the original instrument was shown to Boise. The record is not entirely clear as to whether or not the abstract submitted to Boise contained an account of the deed from the Beadells to the McCoys or an account of the deed from the McCoys to Blatch; but it is certain from the evidence that Boise either saw a recital of those two deeds in the abstract or was shown the original instruments. Boise was acting as trustee for a Mrs. Taylor. One Anderson was negotiating with Mrs. Taylor for a loan and "he brought her to" Boise's office. Boise had noticed the references to the Dennison mortgage in the respective deeds given to the Piersons, the Beadells and the McCoys, as well as

the satisfaction of the mortgage. Boise testified that when Anderson came to his office with Mrs. Taylor:

"I says, 'I don't understand about these reservations here.' He says, 'Those mortgages are satisfied,' he says, 'I am an abstracter and I saw it myself.' I says, 'I wish you would go back to the abstracter and get a note about that.' And so he did and he came back with a note from the abstracter showing that the mortgage was satisfied, and he assured me that he had seen it on the record, so I believed him."

In the course of the conversation between Anderson and Boise the former explained to the latter "that this was probably some real estate man drawing the deed that had copied what had been in somebody's else deed and that was the reason of it."

It is true that as said in *Talbot* v. *Joseph,* 79 Or. 308, 317 (155 Pac. 184, 187), "the record is the standard which the law has erected to decide such questions, and he is bound by the terms of the conveyance as recorded, but no further"; and consequently any defect in the abstract could not be of avail to Boise. The abstract stated the whole truth as it was at that time told by the record and when Boise completed his examination of the abstract he knew as much as he would have learned if he had gone to the records and read all the entries affecting lot 25. It is also true that if he had gone to the courthouse he might possibly have seen the record of the mortgage relating to lot 5; and yet he was under no obligation to examine into the title of lot 5. Nor would it necessarily follow that Boise would be chargeable with bad faith if he had made no other inquiries than those actually made by him, even though he had gone to the courthouse and while investigating the title of lot 25 casually noticed the record of the mortgage on lot 5. Boise did observe that two deeds

made after the satisfaction of the mortgage contained reservations relating to the Dennison mortgage. Boise is a lawyer with many years of experience; and, furthermore, the terms of his trust required him to loan on first mortgages. Boise assured himself that the record in truth contained a satisfaction of the mortgage and this plus his knowledge of the existence of the two deeds containing covenants that the premises were free from all encumbrances, together with the statement made by Anderson justified him as a reasonably prudent business man in making the loan.

The title to lot 25 was examined by "Mr. Schmauch and Mr. McKenzie" for the defendant Jossi. McKenzie & Company conducted a fire insurance, money loaning and real estate business in Portland, the city in which all the transactions involved in this litigation occurred; and W. J. Schmauch was an employee of McKenzie & Company and as such employee "just handled the real estate." An abstract containing an accurate account of the entire record concerning lot 25 was submitted to Mr. McKenzie who examined it. He noticed that Mr. Boise had made a loan of $1,000 and after making the remark that "if Mr. Boise passes on it it must be all right" he sent Schmauch to see Mr. Boise. Schmauch says that he asked Boise "if he had found the title O. K. and made the loan and he said: yes." We think that Jossi through his representatives exercised all the care that could be expected of an ordinarily prudent man.

The decree is affirmed.        AFFIRMED.

McBRIDE, C. J., and BURNETT and BENSON, JJ., concur.