Argued December 8, 1926, reversed January 11, 1927.

## WILLIAM BELT ET UX. *v.* OLE MATSON ET AL.

### (252 Pac. 80.)

**Logs and Logging—Agreement to Sell Standing Timber With Specified Time to Remove It Held "Sale" and not Mere License Revocable at Will.**

1. Agreement to sell standing timber with right to buyer of privies to cut and remove it within five years or within three additional years *held* sale thereof and not mere license revocable at grantor's pleasure so that sale of fee constituted revocation.

**Vendor and Purchaser—Purchaser With Notice of Outstanding Unrecorded Title Takes Title Subject Thereto.**

2. Subsequent purchaser, with notice of outstanding unrecorded title, encumbrance or interest in land takes title subject thereto.

---

1. Rights of parties to a timber contract upon failure of purchaser to remove the timber within the time fixed or within a reasonable time, see note in 15 A. L. R. 41. See, also, 17 R. C. L. 1084.

2. See 23 R. C. L. 256.

**Vendor and Purchaser—If Reasonable Inquiry by Purchaser Would Give Information as to Outstanding Unrecorded Title, He Takes Title Charged Therewith.**

3. If subsequent purchaser has information putting him on inquiry as to outstanding unrecorded title, and reasonable inquiry would lead to full information thereof and he neglects to make inquiry, he takes title charged therewith.

**Vendor and Purchaser—Evidence Held to Show Sufficient Notice to Purchasers of Fee, of Unrecorded Contract for Sale of Timber, as to Make Purchase Subject Thereto.**

4. Evidence that purchasers of fee took with knowledge of outstanding unrecorded agreement for sale of timber *held* to establish sufficient notice as to make purchase subject to rights of purchasers of timber.

**Vendor and Purchaser—Purchasers of Fee Held Charged With Knowledge of Unrecorded Sale of Timber Unless It Could not be Acquired by Reasonable Diligence.**

5. Purchasers of fee, knowing unrecorded contract for sale of timber existed, were charged with knowledge of its contents unless they could show knowledge could not have been acquired by reasonable diligence.

**Vendor and Purchaser—Purchasers of Fee, Having Knowledge of Unrecorded Sale of Timber, Could not Revoke License to Remove It Within Time Granted.**

6. Purchasers of fee having knowledge of unrecorded sale of timber could not revoke license granted to enter land and remove it within time granted by sale contract therefor.

**Judgment—Undetermined Suit Against One Defendant Only Held not Bar to Instant Suit to Enjoin Cutting of Timber.**

7. In suit to enjoin defendants from sawing timber from land purchased by plaintiffs, undetermined suit by plaintiffs against one defendant only *held* not a bar.

---

Abatement and Revival, 1 C. J., p. 48, n. 8.
Costs, 15 C. J., p. 37, n. 71.
Property, 32 Cyc., p. 656, n. 98.
Vendor and Purchaser, 39 Cyc., p. 1703, n. 30, p. 1705, n. 31, 32, p. 1706, n. 33, p. 1707, n. 40, p. 1768, n. 14.

From Yamhill: H. H. BELT, Judge.

Department 2.

This suit was instituted to enjoin the defendants from sawing timber from land owned by the plaintiffs. On the twentieth day of December, 1917, W. G.

---

**3.** See 23 R. C. L. 261.

Moore and Mae J. Moore, husband and wife, were the
owners of said timber and the land upon which it
was growing.  On that date they entered into a con-
tract with the defendant L. N. Tompkins for the sale
of said timber to said Tompkins.  Said contract
(omitting the description of real property) reads as
follows:

"This Article of Agreement made and entered into
on this 20th day of December, A. D. 1917, by and be-
tween W. J. Moore and Mae J. Moore, husband and
wife, of the County of Yamhill, State of Oregon, par-
ties of the first part, and L. N. Tompkins, of the
County of Washington, State of Oregon, party of the
second part, Witnesseth:

"That, Whereas, the parties of the first part are
the owners of all the following described real prop-
erty lying, being and situate in the County of Yam-
hill, State of Oregon, and more particularly described
as follows, to-wit: (description of real property
omitted).

"Whereas, the parties of the first part are desir-
ous of selling, and the party of the second part is
desirous of purchasing all the standing and down
timber of every kind and nature standing, lying and
being upon the above described premises,

"Now, Therefore, This Agreement Witnesseth:
That the parties of the first part, for and in consider-
ation of the promises and agreements of the party of
the second part hereinafter contained, and the sums
of money to be paid by him to the parties of the first
part as hereinafter provided, hereby agree to sell,
and the party of the second part hereby agrees to
purchase all the standing and down timber of every
kind, nature and description, lying, standing and be-
ing upon the above described premises.

"And the party of the second part, for and in con-
sideration of the sale of said timber covenants and
agrees to and with the parties of the first part that he

will pay to them the sum of $6000.00 to be paid in the manner following, to-wit:

"$1000.00 in cash, the receipt whereof is hereby acknowledged, and the sum of $1000.00 on or before December 20th, of each and every succeeding year for a period of five years, said sums to be without interest.

"And it is expressly understood and agreed by and between the parties to this agreement that the party of the second part, his heirs, executors, administrators, assigns, agents and employees are to have five years from this date within which to cut and remove said timber, and that if said timber is not all removed within five years from date, then said party of the second part or his assigns may have three years additional within which to remove the same upon paying each year the taxes on the timber left upon said premises.

"And it is further expressly understood and agreed by and between the parties hereto that the party of the second part, his heirs, executors, administrators, assigns, agents and employees, are to have the privilege of building and constructing a saw mill or saw mills any place or places upon any of the property above described which they shall desire, together with the necessary buildings for the convenient logging of said timber and manufacturing the same into lumber, and of hauling the same away, and shall have the right and privilege at any time they so desire to remove said buildings, mill and fixtures from said premises, and shall have the right to build and construct such logging or other roads as shall be necessary and convenient to log and remove said timber from said premises.

"In Witness Whereof, we have hereunto set our hands and seals in duplicate on this 20th day of December, A. D. 1917.

> "(Sd.) W. G. MOORE.       (Seal)
> "(Sd.) MARY J. MOORE.   (Seal)
> "(Sd.) L. N. TOMPKINS.   (Seal)"

Said contract was duly witnessed, acknowledged and certified entitling it to recordation but it was never recorded. The defendant L. N. Tompkins paid to his grantors $1,000 on the date of the contract and later the balance of the purchase price of said timber. Thereafter and on the twenty-third day of February, 1918, the plaintiff purchased said premises from the said W. G. Moore and Mae J. Moore. The premises were conveyed to plaintiffs by warranty deed containing this reservation:

"All fir timber suitable for lumber on the above place is hereby reserved from said place, the said Moores having 5 years in which to remove the same after which time what is left is to belong and go with the said place."

The deed to plaintiffs was recorded April 26, 1918.

Among others the court made the following findings of fact:

"VII. That the said defendants, in cutting down and removing the said timber upon the said real premises, or any thereof, are acting wholly without authority or right in the premises, and without warrant of law, and wholly against the will and protest of the plaintiffs:"

"X. That at the time of the execution of the contract herein above set forth, the defendant, L. N. Tompkins paid to the said W. G. Moore and Mary J. Moore, his wife, the sum of $1,000.00 in cash and on the 3rd day of March, 1919, made final and complete settlement with the said W. G. Moore on the said contract and paid to the said W. G. Moore the balance agreed by them to be then due upon the said contract."

"XVII. That at the time of the purchase of the said real premises by the plaintiffs as above set forth, the said contract between the said W. G. Moore and wife and the said defendant L. N. Tompkins was not

of record, and the said plaintiffs had no notice whatsoever, neither actual nor constructive, concerning the terms thereof, nor of any other contract or adverse interest in said real premises, excepting only plaintiffs had been informed by the said W. G. Moore prior to the purchase of said premises by plaintiffs that the fir timber thereon suitable for lumber had been sold and that the purchaser thereof had five years within which to remove the same, at the end of which time, if not removed, the same was to go with the said real premises so purchased by plaintiffs, and that the warranty deed to the said plaintiffs should be made to conform to such statement and information so given plaintiffs by the said W. G. Moore; that the said plaintiffs had no notice whatsoever, neither actual nor constructive, of any terms or provisions in any contract relating to the said timber upon said real premises, prior to the time plaintiffs purchased said real premises, inconsistent with, contrary or adverse to the reservation contained in plaintiffs' said warranty deed, and said plaintiffs, prior to the purchase of said real premises by them, were wholly without the knowledge of any facts or conditions whatsoever which would or should put the said plaintiffs upon an inquiry which would or might disclose the provision of said contract held by defendant L. N. Tompkins inconsistent with the reservation expressly set forth in plaintiffs' said warranty deed, and plaintiffs, were wholly without notice or knowledge of any kind whatsoever which made it their duty to conduct such an investigation as might disclose the full and complete terms of said contract held by the said defendant L. N. Tompkins, and the said plaintiffs in this respect acted in a reasonable and ordinary manner, and performed their full duty as to inquiry and investigation, and the said plaintiffs were and are actual and *bona fide* purchasers of the said real premises in their said warranty deed particularly described, and of the whole thereof."

The court adopted as its conclusions of law that the plaintiffs were entitled to a decree as prayed for in the complaint, and a decree was entered accordingly.

REVERSED.

For appellants there was a brief and oral argument by *Mr. Thos. H. Tongue, Jr.*

For respondents there was a brief over the name of *Messrs. Vinton & Tooze,* with oral arguments by *Mr. Walter L. Tooze, Jr.,* and *Mr. Eugene Marsh.*

COSHOW, J.—1. The plaintiffs consume much time and a great deal of space contending that the contract between Moore and defendant Tompkins is a mere license revokable at the pleasure of said Moore and that the sale of the fee to plaintiffs constituted a revocation of that license. It will be noticed that by the contract between Moore and defendant Tompkins the former agreed to sell and the latter agreed to buy all the timber on the land described and to pay therefor the sum of $6,000; that defendant Tompkins paid to Moore $1,000 at the time of entering into the contract and later paid the remainder according to the terms of the contract. This agreement, therefore, is vastly more than a bare license: *Shaw* v. *Proffitt,* 57 Or. 192, 214, 217 (109 Pac. 584, 110 Pac. 1092, Ann. Cas. 1913A, 63). In the valuable note to *Zirkle* v. *Allison,* 15 A. L. R. 38, 70, is this language:

"Where the contract specifies a time for the removal of the timber, the great majority of courts hold that the rights of the purchaser terminate upon his failure to remove within the time stated, and reinvest in the owner of the land. * *

"The result in these cases is not dependent upon the character of the instrument evidencing the sale. It has been well stated that 'no distinction seems to be made in this respect between rights conferred by deed and those conferred by contracts which have not the form nor all the requisites of a deed.' "

2, 3. Tompkins purchased the timber from Moore on the twentieth day of December, 1917. At that time Moore was the owner in fee of the premises, and the contract entered into between him and the defendant Tompkins was a valid sale of that timber. The sale of the land to the plaintiffs was consummated on the twenty-third day of February, 1918. The defendant Tompkins paid the balance of the purchase price of said timber on March 3, 1919, nearly four years before the expiration of the time Tompkins was given to remove the timber and nearly seven years prior to the time he was given to remove the timber with the extension contained in his contract of purchase. This suit was begun on the twenty-fourth day of February, 1923, almost three years before the expiration of the extension allowed Tompkins in which to remove the timber. The only defect in Tompkins' right to enter, fell and remove the timber is his failure to record the contract. The law has been well settled from early times in this state that a subsequent purchaser with notice of an outstanding unrecorded title, encumbrance or interest in real property takes title subject to the outstanding unrecorded title. If the subsequent purchaser has information sufficient to put him upon inquiry as to such outstanding unrecorded title and reasonable inquiry would lead to full information regarding such unrecorded interest and he neglects to make such inquiry, he takes title to the land charged with such outstanding title or interest. This rule was announced by this court as early as

January, 1873. *Bohlman* v. *Coffin,* 4 Or. 313, 317, where we find this language:

"No equitable doctrine is better established than that laid down by Lord Chancellor Hardwicke in *Le Neve* v. *Le Neve* (2 Ldg. Cases in Equity, 160), over a century and a quarter ago, wherein it was held that the person who purchases an estate, although for a valuable consideration, after notice of a prior equitable right, makes himself a *mala fide* purchaser and will not be enabled, by getting in the legal estate, to defeat such prior equitable interest, but will be held a trustee for the benefit of the person whose right he sought to defeat."

*Carter* v. *Portland,* 4 Or. 339, 350:

"The general doctrine is, that whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, and to enable him to ascertain their nature by inquiry, will operate as notice." *Musgrove* v. *Bonser,* 5 Or. 313, 317 (20 Am. Rep. 737).

"Notice of the fact was of such a nature as ought to have put an ordinarily prudent man on inquiry, and in such case a failure to make inquiry is visited with all of the consequences of actual notice." *Wood* v. *Rayburn,* 18 Or. 3, 18 (22 Pac. 521, 526).

*Petrain* v. *Kiernan,* 23 Or. 455, 458 (32 Pac. 158):

"Whatever is sufficient to put a subsequent purchaser on inquiry must be considered legal notice to him of those rights, and when the purchaser omits to observe that ordinary precaution, he must be charged with a knowledge of all facts he might have learned by the exercise of reasonable diligence in making inquiry as to matters to which his attention had been directed: Dembitz, Land Titles, §§ 132, 133," and other authorities there cited: *Jennings* v. *Lentz,* 50 Or. 483, 488 (93 Pac. 327, 29 L. R. A. (N. S.) 584).

120 Or.—21

*Dennison* v. *Jossi,* 93 Or. 581, 587, 588 (184 Pac. 269); *McDougal* v. *Lame,* 39 Or. 212, 214 (64 Pac. 864). One learned author states the rule in this language:

" * * Whatever is notice enough to excite attention and put a party on guard and call for inquiry is notice of everything to which such inquiry might lead." 2 Devlin on Real Estate (3 ed.), 1342, 1344, 1345.

The entire doctrine of notice is treated by that author in 2 Devlin on Real Estate, beginning on page 1341 and with Section 725: *Heisley et al.* v. *Eastman et al.,* 102 Or. 137 (201 Pac. 872); *Foster* v. *Foster,* 107 Or. 355 (213 Pac. 895).

4. The plaintiffs were represented by an able and experienced attorney while negotiating for the purchase of the land from Moore. Plaintiffs exacted an abstract of title to that land. Before the negotiations were closed plaintiffs were informed by Moore that he had sold the timber. Moore testified that he told the plaintiffs that he had sold all the timber to Tompkins. Plaintiffs testified that they did not remember that he mentioned the name of the purchaser of the timber but admit that he told them that he had sold the timber. Their attorney advised plaintiffs to get the contract or conveyance of the timber, have it placed on record and incorporated in the abstract of title. Plaintiffs demanded this of Moore who appeared to be offended by the demand. He represented that the contract for the sale of the timber consisted of only a few words and that it was not worth mentioning. A day or two thereafter negotiations were continued when the plaintiffs, instead of procuring the contract for the sale of timber, or pursuing their inquiry further concerning the instrument

evidencing that sale, accepted the word of Moore to the effect that it was a minor matter. Thereupon it was agreed between the plaintiffs and said Moore that the reservation of the timber incorporated in the deed from Moore to plaintiffs and herein above set out would conclude the matter. The undisputed facts in the record are, and the Circuit Court so found, that plaintiffs paid to Moore $4,800 for the 425 acres of land and that the defendant Tompkins paid Moore $6,000 for the timber with the right to remove the timber limited to five years with an extension of three years in case that was necessary for the purpose of removing the same.

The determination of this suit hinges upon the answer to the question, "Did plaintiffs exercise due caution in accepting the deed from Moore without making further inquiry concerning the contents of the instrument evidencing the sale of the timber to Tompkins"? The timber is a part of the real property. The instrument between the Moores and the defendant Tompkins was a contract on the part of Moore to sell and on the part of defendant Tompkins to buy that timber. Tompkins has fully performed his part of the contract. Upon his payment of the full purchase price in March, 1919, he was entitled to a conveyance of the timber. He thereupon became the legal, as well as the equitable, owner of that timber, his title being subject to the condition that the timber must be removed within eight years from the date of his contract: *Anderson* v. *Miami Lumber Co.*, 59 Or. 149 (116 Pac. 1056); *Nehalem Timber Co.* v. *Columbia County*, 97 Or. 100, 108 (189 Pac. 212, 190 Pac. 318).

5. In our opinion the plaintiffs should have inquired further about the contract between Moore and defendant Tompkins. Plaintiffs urge in their brief

that Moore was unworthy of belief. It appears from the evidence that plaintiffs had been acquainted with Moore for some time. When Moore displayed offense and showed a disposition not to give the information when plaintiffs inquired into the sale of the timber, plaintiffs should have sought information from the purchaser of the timber. Instead of following their attorney's advice, they preferred to rely upon the representation of Moore who may have been interested in concealing a part of the information which would have been revealed to plaintiffs if they had inquired of the purchaser of the timber. Plaintiffs having preferred to rely upon such information as was given to them by their vendor, it would seem to be equitable to refer plaintiffs now to their vendor for relief in case they have suffered any damage by such confidence. From the authorities cited in the forepart of this opinion it clearly appears that the law is well settled in this state that the plaintiffs having been informed that the timber had been sold and that a contract existed, though unrecorded, evidencing this sale of the timber, the plaintiffs are charged with knowledge of the contents of that contract, unless they could show that such knowledge could not have been acquired by reasonable diligence.

The fact is as disclosed by the record that plaintiffs were not interested in the timber. They did not so much as examine it because they did not know that the frame for the sawmill had been erected by the defendant Tompkins in the timber. Had they made a proper inspection of the premises they would have discovered the frame of this sawmill and seen other work that had been done in the way of building roads upon or leading to it from adjoining land. They were not interested enough, according to their own testimony, in the timber or to sale thereof to inquire

for the name of the purchaser of the timber. The purchaser resided, according to their own testimony, only about twenty miles away from the place of negotiations, and with the advantage of transportation then existing in that part of the state it would have been easy to have personally interviewed the defendant Tompkins. A letter addressed to him would doubtless have brought the information which plaintiffs' attorney advised them to secure.

6. Having been informed of the sale of the timber, plaintiffs can no more revoke the license granted to the defendant Tompkins to enter upon the land and remove the timber within the time granted by the contract than Moore could have done: *Heisley et al.* v. *Eastman et al.,* 102 Or. 137, 143 (201 Pac. 872).

The case of *Elliott* v. *Bloyd,* 40 Or. 326 (67 Pac. 202), is not in point. It was held in that case that the purchaser of the timber had only a license. It was so held, however, because the purchaser did not pay for the timber until after it had been severed from the soil and then only at a certain rate per one thousand feet scaled at the mill. The case of *Raymond* v. *Flavel,* 27 Or. 219 (40 Pac. 158), is readily distinguished from the case under consideration. A number of different questions were under investigation in the Raymond case. Upon the question of notice the court found that Flavel, the purchaser of the land, had not received such notice or information as to constitute him a purchaser in *mala fide.* The facts there are very different from the facts in the instant case. The information brought to Flavel in the Raymond case was in the nature of rumors only. In the case at bar the plaintiffs were directly informed by their vendor that he had sold the timber, accepting plaintiffs' version of the information that they received from Moore. There is no pretense that

plaintiffs instituted any further inquiry about that fact. They chose rather to rest upon the warranty of Moore. The case of *Anderson* v. *Miami Lumber Co.*, above, is not in point. In the Anderson case the controversy was over timber that had been felled but not removed before the expiration of the defendant's contract. That question is not involved in the case at bar. Defendant Tompkins does not claim that he has any right to the timber after the expiration of the time limit fixed in his contract of purchase. *Dickey* v. *Henarie,* 15 Or. 351 (15 Pac. 464), would be analogous if the plaintiffs had inquired of Tompkins, who had purchased the timber, about the contract between Tompkins and Moore instead of limiting their inquiry to Moore from whom they were purchasing the land. If Tompkins had pretended to inform plaintiffs the terms of the contract with Moore, plaintiffs would have had a right to rely on the statements of Tompkins, and the latter would have been presumed to have claimed all he was entitled to in his representations to the plaintiffs: *Richards* v. *Snider et al.*, 11 Or. 197 (3 Pac. 177).

7. The suit instituted by these plaintiffs against Ole Matson does not constitute a bar to the present suit. The Matson suit was not determined. There was no adjudication.

The facts stated in the second further and separate reply of plaintiffs do not constitute estoppel.

We conclude that the rulings of the learned Circuit Court in this case are all correct, except as to the findings set out above in regard to the notice had by plaintiffs prior to purchasing the land and the legal effect thereof. Waiving the question of the right of the plaintiffs under their pleadings to claim the benefits of *bona fide* purchasers for value, we are of the opinion that the evidence shows sufficient notice and

knowledge on the part of plaintiffs before closing negotiations for the purchase of the land to make their purchase subject to the rights of the defendant Tompkins as defined and limited in his contract with Moore, and hereinabove set out. It is proper to say here that Judge BELT, who heard and determined the case in the Circuit Court, is not related to the plaintiffs.

Had defendant Tompkins placed his contract with Moore on record this litigation would have been avoided in all probability. For that reason no costs will be allowed to either party in this suit in either court. The decree of the Circuit Court is reversed, and one will be entered here dismissing the suit with prejudice but without costs to any of the parties.

REVERSED AND DECREE ENTERED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.