## Wright v. Webb, et al.

(Decided May 14, 1920.)

## Appeal from Letcher Circuit Court.

1.  Adverse Possession—Constructive Possession—Boundaries.—One in possession of a portion of the boundary of land, claiming all of it, may renounce his constructive possession of a portion of it and if another takes actual possession of that portion renounced, and claims to its boundaries, his possession of the whole of the portion renounced will become adverse to the one renouncing it, and ripen into a perfect title after the expiration of the statutorv period.

2.  Boundaries—Agreement as to Conditional Line—Acquiescence.— Whether it is competent for parties not owning land, but claiming it only, to agree upon a conditional line so as to be binding between them is a question not determined, but if such line is agreed upon before acquisition of title, and it is ratified and acquiesced in after title acquired it will be treated, in a controversy between the parties, as the true line.

E. E. HOGG, DAVID HAYS and HOBSON & HOBSON for appellant.

W. H. MAY, BLAIR & HAWK, ALLIE W. YOUNG, EDWARD C. O'REAR and J. C. JONES for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit when first filed by appellees, H. M. and Frances Webb, against appellant, Samuel J. Wright, John W. Wright, Northern Coal & Coke Company and Consolidation Coal Company, sought the cancellation of a quit claim deed made by plaintiffs, H. M. Webb and wife, on June 19, 1903, to defendants, Samuel J. Wright

and John W. Wright, conveying to them 96 and 62/100 acres of land in Letcher county. The corporate defendants were the vendees of John W. Wright, and as ground for the relief sought the petition averred that plaintiffs were unable to read, and that the defendants fraudulently represented to them the description of the land set out in the deed, and that they were thereby made to convey other land than that which they intended to convey.

Shortly after the filing of the suit it was dismissed as to John W. Wright and the two corporations. Samuel J. Wright answered, denying that he had anything to do with the procurement of the deed and renouncing any claim thereunder, alleging that it was procured by his brother, John W. Wright, without his knowledge or consent. The petition was afterward amended, in which amendment plaintiffs claimed only about forty acres of the land and asserted both a paper and possessory title thereto. The only remaining defendant (appellant, Samuel J. Wright) responded to the amendment in which he denied plaintiff's claim, and asserted both a paper and possessory title in himself to the forty acres described in the amendment. Afterward the other individual appellees, children of the original plaintiffs, filed their intervening petition, in which each of them asserted title in the surface of the forty acres to a one-sixth undivided interest in it.

Proper pleadings made the issues, and after somewhat extended preparation the cause was submitted and the court by its judgment cancelled the deed attacked in the original petition and adjudged the forty acres described in the amended petition to belong to appellees, and to reverse that judgment the defendant, Samuel J. Wright, prosecutes this appeal.

Perhaps at this point it should be stated that one or perhaps both of the corporate defendants claimed to own the coal and other mineral under the land in controversy, which is disputed by appellant, but if the judgment of the court was proper, this phase of the case need not receive further consideration. The record is encumbered by the testimony of a large number of witnesses, and it may be said that the predominant feature of all lawsuits, to-wit, contradiction in the testimony, is found in this record, but there are some facts about which all parties agree.

Joseph Craft and Joel Wright were brothers-in-law, living about a mile and one-half apart, just north of the North fork of the Kentucky river. A mountain ridge connected Boone ridge on the north side of the river with Pine mountain on its south side, which connecting mountain ridge ran between the residences of the two brothers-in-law. From time to time they procured patents to land lying both north and south of the river, and some of the patents of each extended over and beyond the connecting mountain ridge. There were no patents introduced for lands lying north of the river, issued to either of the parties prior to April 15, 1873, when Joel Wright obtained a patent for two hundred acres north of the river, which extended across the connecting mountain ridge to a spur running from it in the direction of the forks of Ritter's branch, which branch emptied into the river not far from the residence of Joseph Craft, and it is quite clear from the testimony that each of the parties referred to was claiming by patents or otherwise the land along the north bank of the river, where they resided.

It is furthermore apparent from the testimony that Joseph Craft, at some early date not appearing, acquired the patent to the one hundred acres issued to John W. Bates on March 7, 1848, the greater portion of which lay on the north and west sides of the connecting mountain mentioned above, but the 1873 patent to Joel Wright extended beyond that connecting mountain to the spur running to the forks of Ritter's branch and lapped upon the Bates patent. It is the land between the southern boundary of the Bates patent and the connecting mountain that is in controversy in this suit, since appellant is claiming under the 1873 two hundred acre patent issued to his father, Joel Wright, and he admits that in so far as it laps on the Bates patent it was void. This admission is a circumstance tending to show that Joseph Craft, under whom appellees claim, was the owner of the Bates patent. Joel Wright died in 1879, and Joseph Craft died about ten years thereafter. On March 25, 1881, Joseph Craft and wife deeded to their daughter, Mary M. Mullins, and her husband, James H. Mullins, about one hundred and fifty acres of land, including that portion of the Bates patent adjoining the land in controversy, and in describing the land conveyed the deed calls for the connecting mountain re-

ferred to, not stopping at the southern line of the Bates patent.

We will not stop to discuss or apply the calls of this or any other muniment of title involved, treating them as embracing the land which the preponderance of the testimony, by competent witnesses, shows them to include. So treating the deed by James Craft and wife to Mullins and wife, we think there is no doubt but that its calls go to and run along the top of the connecting mountain before mentioned so as to include the land in controversy. Mullins and wife moved upon the land conveyed to them and made a settlement thereon, and according to the undisputed testimony they claimed it to the extent of the boundary described in their deed (the connecting mountain above). About a year after they took possession of the land they sold it by parol contract to one Holbrook, who moved upon and occupied it, but failing to pay for it, he surrendered it, and on November 9, 1885, Mullins and wife sold and conveyed it to the appellees, H. M. Webb and wife, who immediately moved upon and took possession of it and have continued to occupy it since then.

The dwelling house on the one hundred and fifty acres sold by Joseph Craft to his daughter, Mrs. Mullins, and her husband, was located within the Bates patent, but the vendees or some one claiming to own the land, directly thereafter made a clearing, a portion of which was on the forty acres of land involved, just south of the southern boundary of the Bates patent. That land was fenced and cultivated and has been inclosed and used continuously since then, the evidence showing that the occupants claimed all of the land to the boundary of the Joseph Craft deed, which, as we have seen, extended to the dividing or connecting mountain. It is furthermore shown that there were old marked trees along the top of that mountain, which demonstrates conclusively that at some time in the past it was made a dividing line.

It is insisted that the appellee, H. M. Webb, is estopped to claim title to the land in controversy because when he divided his land among his children he did not include any of it in that division but ran the lines only with the southern line of the Bates patent, and that on two or three occasions he is alleged to have stated that he did not own any land, and disclaimed owning the particular land in controversy. One of those occa-

sions was a number of years ago when a moonshine still was discovered on the land in dispute and the revenue officers were trying to find the operator thereof, and we can well understand why he would disclaim the ownership under such circumstances, although he denies such disclaimer. Another occasion was when he applied for a pension as an ex-Federal soldier, when he stated in his application that he did not own any land. At that time the deed which the original petition in this case seeks to cancel had been executed, and it may be explained that he thought that deed, until it was canceled, vested the land in the grantees and divested him of title.

It is furthemore insisted as a potent fact against the right of the appellees to recover that H. M. Webb for a number of years did not list or pay taxes on the land involved, but he explains this by saying that he had been exonerated by the county court of his county from paying taxes, which exoneration he thought included property taxes as well as a poll tax. But, be these matters as they may, none of them was acted on in such a way as to create an estoppel, and can at most be considered as contradictions of the testimony given by H. M. Webb.

The appellant, Wright, bases his claim to the land upon a deed which he obtained from his mother, Eliza Wright, of date September 7, 1886, she having obtained a deed to it from the heirs of Joel Wright on March 6, 1882. The description in the deed of the Wright heirs to their mother, Eliza Wright, reads:

"Beginning at a conditional line made between Joseph Craft, Sr., and Joel Wright, dec'd; thence with said line southward to the top of the hill; thence N. E. with Susan Wright's line to the top of the hill; thence with the top to a conditional line made between Sarah Potter and Eliza Wright; thence with said line to the top of the mountain on the other side; thence back with the top of said ridge to the conditional line made between Joe Craft and Wright, dec'd."

It is shown by the great preponderance of the testimony that the boundaries of the above description ran along the top of the connecting mountain hereinbefore mentioned and did not extend to the spur running to the forks of Ritter's branch, as did the 1873 patent of Joel Wright. It is true that Samuel Wright and others contend to the

contrary, and insist that their mother, as well as her vendee Samuel Wright, was in possession of a portion of the 1873 patent and claimed to its boundaries, which insistence is, to say the least of it, contrary to that made now by the appellant, since we have seen that he is not claiming any land beyond the Bates patent. If, however, there was ever any basis for the claim of possession to the boundaries of the Joel Wright patent, such claim was withdrawn after the execution of the deed to Eliza Wright as to so much of the land lying beyond the connecting mountain, because there was never any settlement or actual possession taken by the Wrights of any of the 1873 patent beyond that mountain, up to the date of the filing of this suit. That the constructive possession of a portion of a boundary may be so withdrawn, and the land included within such portion be held adversely by another taking actual possession of a part of it and claiming to its well defined boundary, is held in the case of Ingram v. Tucker, 151 Ky. 827. But, independent of that case, we see no legal reason to prevent the application of such a principle. It follows, therefore, that the possession by H. M. Webb and wife, and by their vendors of the land in controversy, by virtue of taking actual possession of a portion of it, and claiming all of it, has been adverse as to the whole, from the time the actual possession was taken, which has been for as much or more than thirty years.

Furthermore, it is conclusively shown that at an early date—between 1850 and 1855—there was an agreement between Joseph Craft and Joel Wright whereby they fixed and agreed upon the connecting mountain above mentioned as the dividing line between their lands, called in this record a conditional line. The defendant, and his witnesses, being mostly relatives, dispute this agreement, but in the light of the testimony, not only from the mouths of the witnesses, but from expressions found in a number of deeds, we are convinced that the agreed line was established. We will not rehearse the testimony upon this point, but refer to the case of Holbrook v. Wright, 187 Ky. 732, where the same conditional line south of the river was involved, and in which the testimony of the witnesses, many of whom testified in this case, is fully set forth, and their testimony in each case is of the same general tenor. That case is also authority upon the question as to the establishment of the conditional line here involved as shown below.

It is insisted that at the time of the establishment of the conditional line neither Craft nor Wright owned any land on either side of the mountain on the north side of the river, where the land involved is situated. This, no doubt, is true, especially as to Wright, since he obtained his patent in that vicinity in 1873, but it is not shown that Craft did not own the Bates patent at that time. Moreover, both Wright and Craft, even at the time, were claiming the land on the respective sides of that mountain to the top of Boone ridge, which was beyond the land in controversy, and appellees, therefore, rely upon the case of Mosely v. Eversole, 148 Ky. 685. In that case a conditional line was agreed upon when neither party had title from the Commonwealth to the lands divided, although they were claiming them. They continued afterward to recognize that line, and it was held that "under such circumstances the law will presume they were entitled to the land which they separated by the line, and will not now permit those who have acquiesced for all this time to question it." Whether an agreed line under such circumstances would be upheld without ratification after acquisition of title we need not determine, since we are convinced that if the agreed line in this case was ratified and acquiesced in by the parties after they became the owners of the land on each side thereof, they will be bound thereby (Holbrook v. Wright, *supra*), and the testimony shows that the line was acquiesced in and recognized by the Wright heirs in the deed which they executed to their mother, and was recognized by Joseph Craft in the deed which he executed to Mullins and wife wherein the boundaries of the land described extended to the mountain, which constituted the conditional line.

If, however, upon the whole case we were doubtful from the testimony as to the facts concerning the adverse holding of the appellees, or doubtful as to the establishment of the conditional line, under the rule of this court to resolve such doubts in favor of the finding of the chancellor, it would be our duty to affirm the judgment.

The conclusion reached renders it unnecessary to discuss the claims of appellees, the children of H. M. Webb and wife.

Wherefore, the judgment is affirmed.