**FIDELITY LUMBER CO. et al. v. ADAMS.**
**(No. 629.)**

(Court of Civil Appeals of Texas. Beaumont. Feb. 4, 1921. . Rehearing Denied Feb. 23, 1921.)

**1. Appeal and error ⬅═⇒1002—Finding on conflicting evidence supported by positive testimony not disturbed.**

A jury finding of the execution and delivery of a lost deed, when supported by positive and unequivocal testimony and other evidence tending to show such execution and delivery, cannot be disturbed, though there are many circumstances strongly controverting such testimony.

**2. Trespass to try title ⬅═⇒39(1)—Finding that claimant of full title did not file or authorize filing deed to timber only held warranted.**

Evidence *held* to sustain a finding of the jury that one claiming land under a lost deed and claiming that he refused to accept a deed to the timber alone did not file the timber deed with the county clerk or authorize any one else to file it.

**3. Estoppel ⬅═⇒15—Grantee not accepting deed not estopped to deny that he was holding thereunder.**

Where a timber deed was not accepted by the grantee, and, though filed in the county clerk's office, was not filed by him, and he did not authorize any one to file it, he was not estopped, as against persons who saw such deed on file, to deny that he was holding under such deed.

**4. Estoppel ⬅═⇒15—Nonaccepting grantee held not charged with constructive knowledge of filing.**

One refusing to accept a timber deed and obtaining a deed to the land which was not recorded and was subsequently lost was not charged with constructive knowledge of the unauthorized filing of the timber deed by some one else.

**5. Vendor and purchaser ⬅═⇒231(4)—Grantee not charged with constructive knowledge of grantor's subsequent conveyance.**

The grantee of land was not charged with constructive knowledge of a subsequent conveyance of the land by the grantor to a third person.

**6. Estoppel ⬅═⇒70(1)—Payment of taxes held to raise no issue of estoppel between grantor and grantee of timber.**

Where A., having an unrecorded deed to land, sold the timber, and persons claiming under the timber deed acquired a deed to the land from one having a subsequent conveyance from A.'s grantor, the failure of A. to pay taxes and their payment by the persons claiming under the timber deed raised no issue of estoppel against him.

**7. Vendor and purchaser ⬅═⇒229(2)—Grantees of timber not innocent purchasers of title to land adverse to their grantor.**

An unrecorded deed to A., who sold the timber on the land, was in the chain of title of persons claiming under the timber deed, and a timber deed to A. which he had refused to accept was not in their chain of title, and they were therefore not innocent purchasers of an outstanding claim to the land under a subsequent conveyance from A.'s grantor.

**8. Evidence ⬅═⇒186(2)—Testimony that lost instrument was a deed held properly admitted.**

In proving a lost deed, it was not error to permit witnesses to testify that the instrument executed was a deed, though they did not give the language of the instrument, where they testified that it described the land in controversy, and two of the witnesses were lawyers, one of whom wrote the instrument, and the grantors testified that they did not afterwards claim the land.

**9. Trial ⬅═⇒350(3) — Issue whether plaintiff would have told defendants of interest in land on inquiry held properly rejected.**

In trespass to try title to land conveyed by unrecorded deed to A., who conveyed the timber thereon to persons subsequently purchasing the land from one claiming under a subsequent conveyance by A.'s grantor, the court properly refused to submit a question as to whether A. would have told defendants of his interest on inquiry, though he testified that he had forgotten he owned the land, as he did not lose the land by forgetting that he owned it.

**10. Vendor and purchaser ⬅═⇒102 — Contract held not repudiated or rescinded so as to give good title under subsequent deed.**

Purchasers of land from the state who had not received a patent conveyed to A. by unrecorded deed, and he conveyed the timber to one who conveyed to a lumber company. A.'s grantor subsequently executed another deed, and the lumber company acquired the title thereunder. The lumber company assumed and paid the purchase-money notes executed by A. and paid the balance due the state. A.'s grantor received a patent while the lumber company was claiming the land. *Held*, that there was no repudiation or rescission of the executory contract

⬅═⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

between A. and his grantor defeating A.'s title to the land.

**11. Abatement and revival ⬥⇒41—Parties ⬥⇒ 51(5) — Conveyance pendente lite by land claimant does not abate suit or make grantee a necessary party.**

A conveyance of part of the land by plaintiff pending a suit in trespass to try title did not abate the suit as to the land conveyed or make the grantee a necessary party to the litigation.

**12. Acknowledgment ⬥⇒5—Unnecessary when execution proved as at common law.**

Whether a lost deed was duly acknowledged by the grantor was immaterial where the execution was proved as at common law.

**13. Homestead ⬥⇒125—Husband's deed conveyed community interest except homestead claim.**

A deed from a man in which his wife did not join conveyed to the grantee all the community interest in the land except the homestead claim.

**14. Homestead ⬥⇒131—Insufficient conveyance held repudiated by subsequent conveyance.**

Where a conveyance by a husband and wife of land in which they had a homestead was not duly acknowledged by the wife, the execution and delivery of a subsequent deed while they were still on the land and had acquired no other homestead was a repudiation of the attempted sale to the first grantee.

**15. Appeal and error ⬥⇒891—Evidence first offered on appeal not considered.**

The Court of Civil Appeals is without authority to consider evidence offered for the first time in that court affecting the issues passed on by the jury.

Appeal from District Court, Tyler County; D. F. Singleton, Judge.

Suit by W. E. Adams against the Fidelity Lumber Company and others. From a judgment for plaintiff, defendants appeal. Affirmed in part, reversed and rendered in part, and reversed and remanded in part, with instructions.

Vinson, Elkins & Wood and Hutcheson, Bryan & Dyess, all of Houston, Dies & Wheat, of Woodville, and Baker, Botts, Parker & Garwood, of Houston, for appellants. Coleman & Lowe, of Woodville, for appellee.

Walker, J. This is a suit in trespass to to try title to 640 acres of land in Tyler county, Tex. Appellee was plaintiff below, and the appellants were defendants.

In answer to special issue No. 1 the jury found that in or about the 27th day of February, 1902, J. J. Abbitt and wife, Anna Abbitt, executed and delivered a deed to W. E. Adams. the plaintiff, conveying to him the land in controversy. Appellants challenge this finding as being "so contrary to the great weight and preponderance of the tes-

timony as to be manifestly wrong and to be the result of bias, prejudice, or mistake."

This deed was not of record, but, its loss being shown, secondary evidence was admitted as to its execution and contents. Abbitt and his wife both testified, positively and unequivocally, that they sold this land to appellee; that they executed and delivered to him a deed conveying him this land; and that he paid them one-third of the purchase price in cash and executed notes to them for the balance. J. A. Simmons testified that he was present, heard the trade between appellee and Abbitt, and that Abbitt agreed to sell him the land at $4 per acre; that Adams wrote the deed, and that he was present when the deed was delivered to Adams by Abbitt; that he heard the deed read, and, in his best recollection, had the deed in his hand; and that it conveyed the land in controversy. Plaintiff, Adams, testified that he bought the land in controversy from Abbitt and wife at $4 per acre; that he paid one-third cash and executed notes to them for the balance; that he wrote the deed conveying the land to him; and that after it had been executed Abbitt delivered him the deed. B. F. Hughes testified that in 1901 or 1902 he tried to buy the land from Abbitt for S. F. Carter, and Abbitt refused to sell to him, and told him he had sold to plaintiff. On the 6th day of June, 1904, at the request of the Emporia Lumber Company, one of the defendants, which at that time claimed to own the land and timber, Abbitt executed and delivered to it the following release deed:

"The State of Texas, County of Tyler.

"Whereas, heretofore J. J. Abbitt and wife conveyed to W. E. Adams and delivered to him a certain deed of conveyance wherein the parties first named did convey to the party last named and following described tract or parcel of land to wit: In Tyler county, Tex., known as survey No. 13, G. & B. Navigation Co., patented to J. J. Abbitt.

"And whereas, as a part consideration for said land, the said W. E. Adams did execute and deliver unto the said J. J. Abbitt two certain promissory notes each bearing even date with said deed, to wit, February 27, 1902, and each due July 15, 1903, and each for the sum of eight hundred and fifty-two dollars, bearing interest at the rate of 8 per cent. per annum from date, and vendor's lien was expressly retained in such deed to secure the payment of such promissory notes.

"And whereas, said promissory notes have been paid off and discharged both principal and interest and at the time of their payment said notes were the property of the undersigned:

"Now, therefore, know all men by these presents that I, J. J. Abbitt, of the county of Tyler and state of Texas, and in consideration of the premises and the full and final payment of said notes, have remised, released, quitclaimed, discharged, and acquitted and by these presents do remise, release, quitclaim, discharge, and

acquit unto the said W. E. Adams, his heirs and assigns, the vendor's lien heretofore existing upon the land and premises aforesaid.

"Witness my hand this the 6th day of June, 1904.      J. J. Abbitt."

[1] While it was claiming to own this land, this defendant had this release deed recorded in Tyler county. Many circumstances in this record strongly controvert the testimony of these witnesses, but, as the jury determined this issue in favor of appellee, we cannot disturb their verdict, on the record as here presented.

[2] Abbitt and wife first executed a deed to Adams conveying him the timber on the land in controversy. Simmons and Adams and the Abbitts testified that this timber deed was not delivered to Adams; that he refused to accept the timber deed, but insisted on a conveyance of the land, and in lieu of the timber deed Abbitt and wife executed and delivered to Adams the deed conveying to him the land. All of these witnesses were positive that the timber deed was never delivered to nor accepted by Adams. Adams testified that the timber deed was not filed by him in the county clerk's office, and that he did not authorize any one to file it for him. However, this timber deed was found in the office of the county clerk in an old box labeled "Deeds not to be recorded," and indorsed as follows:

"This instrument filed but not recorded. Filed for record the 31st day of March, 1902, at 10:35 o'clock a. m., by A. G. Reid, county clerk, Tyler county, Tex."

The clerk had no independent recollection of the filing of this deed, nor did he know who filed it with him. He said he put it in the old box under direction of the person who filed it. It was shown that Adams was a large purchaser of land and timber in Tyler county at that time, and it was not shown that he had any reason for keeping this deed off the record, nor was it shown that he ever kept any other deed off the record. We sustain the finding of the jury that Adams did not file the timber deed with the county clerk, and that he authorized no one else to file it.

On the 25th day of April, 1902, appellee sold the timber on this land to John Henry Kirby, who sold it to the Emporia Lumber Company on the 12th day of May, 1904. Appellants offered in evidence a deed from Abbitt and wife to S. H. Meadows, dated the 17th day of October, 1903, conveying to him the land in controversy. On the 23d day of May, 1904, Meadows conveyed the land to the Emporia Lumber Company, but, as we have said, at that time the lumber company had already purchased the timber from Kirby.

[3-6] From the Emporia Lumber Company this timber and land passed through the hands of several parties, and was finally acquired by the Fidelity Lumber Company. Before some of these defendants acquired the title of the Emporia Lumber Company, this old timber deed was found in the county clerk's office, and was referred to by attorneys passing on the title, with suggestions from them that it be recorded. They assumed that Adams held under the timber deed, and that through him and Kirby the Emporia Lumber Company had acquired the title to the timber, and that it had acquired the land under the Meadows deed. Appellants have paid all taxes on this land since 1902, while appellee has paid no taxes. On these facts, appellants assert that Adams is now estopped to deny that he was holding under the timber deed. We cannot sustain this proposition. This timber deed was not accepted by Adams, nor did he file it in the office of the county clerk, nor did he authorize any one to file it for him. He had no knowledge that it had been so filed until after he had brought this suit. The unauthorized filing of the deed by some one else was not binding on him, nor did the law visit him with constructive knowledge of that fact. He made no misleading statement of his claim to any of the defendants, nor to any one else. It was not shown that he knew that appellants were asserting a claim adverse to his interest prior to the acquisition of their interest in the land. He had no constructive knowledge of the subsequent conveyance made by Abbitt and wife to Meadows. White v. McGregor, 92 Tex. 556, 50 S. W. 564, 71 Am. St. Rep. 875. The fact that appellants paid the taxes and that appellee paid no taxes does not raise an issue of estoppel against him.

[7] None of the defendants are innocent purchasers. They held this timber under the deed from Adams to Kirby. Adams held the timber under the conveyance of the land by the Abbitts. This Adams deed was in their chain of title. It is true they were mislead by the unauthorized filing of the timber deed, but appellee was not responsible for that. The fact remains that the timber deed was not a link in their chain of title. Holding under Adams, they must take notice of the character of his title. Now can they rely on the subsequent conveyance from Abbitt and wife to Meadows? Before buying from Meadows, the Emporia Lumber Company bought the timber from Kirby, paid part cash, assumed the Adams purchase-money notes to Abbitt, and afterwards paid them off. It was not ever shown that Meadows was an innocent purchaser from the Abbitts. Apart from the fact that it had bought the timber under the Adams title, it was not shown that the Emporia Lumber Company was an innocent purchaser from Meadows. In law, it was not an innocent purchaser, because, having bought the

Adams title before buying the Meadows title, it was visited with knowledge of all links in its Adams chain of title. This notice was visited upon every subsequent purchaser under the Emporia Lumber Company, because their chain of title revealed the fact that they and their privies acquired the Adams title first. Runge v. Gilbough, 87 S. W. 836, and cases cited therein.

[8] The court did not err in permitting Mr. and Mrs. Abbitt, J. A. Simmons and Ed Adams to testify that the instrument executed by the Abbitts and delivered to Adams was a deed. While none of them attempted to give the language of the instrument, all of them testified that it described the land in controversy. They called it a deed. The Abbitts testified that they had not claimed the land since the execution and delivery of the instrument to Adams, but recognized it as belonging to him. Simmons and Adams were lawyers, and it was shown that Adams wrote the instrument. McCreary v. Reliance Lumber Co., 16 Tex. Civ. App. 45, 41 S. W. 485; Daniels v. Creekmore, 7 Tex. Civ. App. 573, 27 S. W. 148; Bounds v. Little, 75 Tex. 316, 12 S. W. 1109.

[9] Adams testified that he had forgotten that he owned this land until Abbitt reminded him of it a short while before this suit was filed. On this testimony appellants asked the court to submit to the jury the question whether Adams would have told the defendants of his interest in the land if they had inquired of him before they acquired their interest in the land. No error is shown in the refusal of this issue. Adams did not lose his land by forgetting that he owned it. He did not mislead the appellants by any statement made to them, nor was it shown that they relied on the fact that he had forgotten his ownership of the land. Kirby's interest in this land was fully submitted to the jury under question No. 10:

"Did John H. Kirby furnish the case that was paid to Abbitt in February, 1902?"

All other issues requested by appellants on this issue were properly refused.

[10] Abbitt and wife purchased the land in controversy from the state, and at the time they executed the deed to Adams patent had not issued to them. The Emporia Lumber Company paid the balance of the purchase money due by Abbitt to the state, and, as we have shown, assumed and paid off the purchase-money notes executed by Adams to Abbitt. The patent issued to Abbitt while the Emporia Lumber Company was claiming the land. On these facts appellants advance the proposition that Adams "failed to pay the state, and failing to pay Abbitt was a repudiation of the executory contract on his part, and in view of such failure Abbitt's conveyance to Meadows was a rescission of the executory contract with Adams, and

when the equities arising from the payment by Carter and the Emporia Lumber Company for the amounts due the state and due Abbitt to Meadows, the said Carter and Emporia Lumber Company acquired a good title from any claim by Adams." We cannot agree to this proposition. Abbitt did not repudiate his executory contract with Adams, but in fact accepted the balance due under that contract. Carter and the Emporia Lumber Company held under that contract, and assumed and paid off the notes evidenced therein.

[11] Pendente lite appellee sold 200 acres of the land in controversy to Judge J. A. Mooney. This sale did not abate the suit nor was Judge Mooney a necessary party to the litigation. Appellants' assignments complaining of the judgment in favor of appellee for this 200 acres of land and for the damage to the timber are overruled. Ostrom v. Layer et al., 48 S. W. 1095; Drouilhet v. Pinckard, 42 S. W. 135; Wallace v. Shapard, 94 S. W. 151; Seiter v. Marschall, 105 Tex. 205, 147 S. W. 226, and cases cited therein.

[12-14] We do not discuss the assignments that the due acknowledgment of the deed by J. J. Abbitt was not shown by the testimony. In our view of the case, this is not a material issue, as the execution was proved as at common law. But we do sustain the assignment that the testimony is not sufficient to raise the issue of such acknowledgement by Mrs. Abbitt. At the time of the execution and delivery of the deed by the Abbitts to Adams they had their homestead on this 640 acres of land. The deed from Abbitt, without his wife joining therein, conveyed to Adams all the community interest in the land, except the homestead claim. Whetstone v. Coffey, 48 Tex. 269; Henkel v. Bohenke, 7 Tex. Civ. App. 16, 26 S. W. 645. But, while they were on this land and at the time when they had not acquired another homestead, Mrs. Abbitt joined her husband in a deed to S. H. Meadows, as we have already stated, purporting to convey him the entire 640 acres. The execution and delivery of this deed was a repudiation by them of the attempted sale of their homestead to Adams. Under the Constitution this was 200 acres of land, and under this deed to Meadows, this homestead claim, amounting to 200 acres, passed to him.

[15] Since the submission of this case appellants have filed certain evidence in this court, raising no jurisdictional question, and pray that we consider it as a part of this record. This we cannot do, because, as we understand the rule in this state, we are without authority to consider evidence offered for the first time in this court affecting the issues passed on by the jury. Fitzgerald v. Wygal, 24 Tex. Civ. App. 372, 59 S. W. 621; Counts v. Southwestern Land Co., 206 S. W.

207; Garza v. City of San Antonio, 214 S. W. 488.

It follows that we must affirm this judgment in favor of appellee to all of the land in controversy except the 200-acre homestead claim. As to this 200 acres we reverse the judgment of the trial court and here render judgment in favor of appellants. The judgment of the trial court was also in favor of appellee for the damage done the timber on all the 640 acres by reason of the fact that it had been "turpentined" by the defendants. It follows that we must reverse and remand this cause, so that the trial court can abate this damage to the extent of the 200 acres awarded to appellants.

We also reverse and remand the judgment against the several defendants on their warranties, so that proper credit can be allowed by reason of the fact that the title to 200 acres did not fail. And it is accordingly so ordered.

Affirmed in part, in part reversed and rendered, and in part reversed and remanded, with instructions.

### On Rehearing.

The timber deed from Kirby to Emporia Lumber Company was dated the 21st of May, 1904. In our original opinion we gave this date as May 12th.

We also find that S. F. Carter, referred to in our reference to B. F. Hughes' testimony, was president of the Emporia Lumber Company, and "when the Emporia Lumber Company negotiated for and finally purchased section 13, involved in this suit, the company was represented by S. F. Carter in that purchase, and he had been told, more than two years before, by Hughes, that Abbitt had said he had sold the land to Adams."

We have carefully examined the record in reference to the other assignments made by appellants against our conclusion of fact, and, as we construe the record, our statement is fully sustained in all other respects.

After giving due consideration to the motions for rehearing filed by both parties, they are in all things overruled.