Argued May 3, reversed June 16, petition for rehearing
denied September 22, 1965

SCOTT ET UX *v.* NYGAARD ET AL

403 P. 2d 15
405 P. 2d 850

*David M. Spiegel,* Portland, argued the cause for appellants. With him on the brief were Spiegel & Spiegel, Portland.

*Lawrence Morley,* Lebanon, and *Charles Boardman,* Bend, argued the cause for respondents. With them on the brief were Morley, Thomas & Orona, Lebanon.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

This is a suit by plaintiffs to quiet title to a house and lot in the city of Bend. Defendants appeal from a decree favorable to plaintiffs.

The property was owned by Agnes Anderson subject to a mortgage to Equitable Savings and Loan Association when she transferred it by deed recorded February 3, 1961, to her sister and brother-in-law, the Sallanders. This transfer was in fact a mortgage to secure $1,650 plus interest owed by Mrs. Anderson to the Sallanders. The validity and character of this transaction are not in question. On June 7, 1961, a judgment for $2,000 plus costs in favor of defendants was docketed against Mrs. Anderson. Thereafter, on August 4, 1962, the property was listed for sale with a real estate agent. On February 25, 1963, execution was levied against the property on defendant's judgment even though at that time record title was in the name of the Sallanders. On March 1, 1963, Mrs. Anderson filed a voluntary petition in bankruptcy listing defendants as creditors and her interest in the property in question, over and above the mortgages to Equitable and to the Sallanders, as her only asset.

After the filing of the bankruptcy, correspondence was exchanged by the trustee in bankruptcy, attorneys for defendants, and the real estate agent relative to the claims of the trustee and the defendants in the property. Both claimed Mrs. Anderson's interest. The trustee claimed it as an asset of her bankrupt estate, and defendants by virtue of the levy of execution.

On April 22, 1963, plaintiffs deposited $1,500 earnest money with the real estate agent and signed an agreement to purchase. On May 15, the trustee in bankruptcy wrote to the real estate agent informing him that the trustee had decided that defendants' claim to Mrs. Anderson's interest was superior to the trustee's; that therefore he had no further interest in the property as defendants' claim would exhaust its value and that the agent and the Sallanders henceforth would have to deal with defendants' attorney. The agreement to purchase was signed by the Sallanders shortly prior to May 21. It provided that the Sallanders would furnish marketable title to plaintiffs.

After signing the agreement plaintiffs were informed that there was difficulty with the title because of a lien but were given no clear understanding of the nature of the difficulty. On July 19 the defendants recorded in the deed records of Deschutes County a certified copy of Mrs. Anderson's petition in bankruptcy showing as an asset her interest in the property recorded in Sallanders' name. About August 1 the Sallanders' lawyer checked on the bankruptcy proceeding and learned that the trustee, despite his letter of May 15, still considered Mrs. Anderson's interest as a possible asset. The attorney testified that he could not remember whether he told plaintiffs of this or not.

The Sallanders were afraid they would lose the sale

before they could adjudicate the title. As a result, they worked out a procedure among the title company, the plaintiffs and themselves whereby $3,210 from the purchase price would be deposited in escrow with the title company to cover the outstanding claims of the defendants and Mrs. Anderson. The title company then agreed to issue a policy insuring plaintiffs' title and to disburse the funds either to the Sallanders or the claimants depending on whether the Sallanders were successful in clearing the title. On September 18 the title company, after receiving the deposit pursuant to the escrow agreement, recorded a warranty deed from the Sallanders to plaintiffs and issued a policy of title insurance to plaintiffs excepting only the first mortgage which plaintiffs agreed to and later did assume.

Defendants purchased Mrs. Anderson's interest in the property from the trustee in bankruptcy by deed dated September 23 and recorded September 26. Mrs. Anderson did not receive her discharge in bankruptcy until November 4. This suit was brought on November 21 in the name of the plaintiffs who were then the record owners.

Defendants' claim to the property, if valid, must rest on one of two theories. Either the levy of execution on the judgment against Mrs. Anderson must have been valid even though, at the time of the levy, the record title was in the Sallanders, or the trustee in bankruptcy must have had an interest capable of being asserted at the time of the deed from the Sallanders to plaintiffs.

■■ It is unnecessary to decide the efficacy of the levy because of the view we take of the interest defendants acquired from the trustee in bankruptcy. Plaintiffs claim they are bona fide purchasers because they

relied upon the May 15 letter sent to the real estate agent by the trustee in bankruptcy informing the agent that the trustee claimed no further interest in the property. There is no proof that the plaintiffs were ever told by the Sallanders of their attorney's discovery that the trustee had second thoughts about the value of his interest. However, this information was all transmitted to plaintiffs by other means. When the escrow transaction was worked out which made possible the issuance of a title insurance policy to plaintiffs, plaintiffs were given in advance a copy of the proposal which listed Mrs. Anderson's interest in the property as being outstanding. The existence of this interest was one of the reasons prompting the title company to require the money to be deposited in escrow for its protection. The very fact that there was a necessity for the escrow arrangement put plaintiffs on notice of Mrs. Anderson's outstanding interest and prevented plaintiffs from claiming the status of a bona fide purchaser for value without notice.

The plaintiffs cannot claim to be purchasers without notice as to the $1,500 paid as earnest money prior to their learning there was some defect in the title. The whole arrangement was renegotiated at the time of the escrow when plaintiffs had information which put them on notice of defendants' interest.

The trustee automatically succeeded to Mrs. Anderson's interest upon her being adjudicated a bankrupt. Bankruptcy Act § 70(a)(5), (11 USC § 110(a)(5)). This interest was that of an owner who had mortgaged the property to the Sallanders to secure the payment of $1,650 plus interest at 6 per cent from February 3, 1961. It was transferred to defendants prior to the commencement of this suit. Plaintiffs, before completing purchase, had knowledge of Mrs. Anderson's

outstanding interest and therefore were not good faith purchasers for value without notice.

The decree of the trial court is modified and defendants are decreed to be the owners of the property subject to a mortgage in favor of plaintiffs in the sum of $1,650 plus interest at 6 per cent per annum from February 3, 1961.

## ON PETITION FOR REHEARING

Laurence Morley and Morley, Thomas, Orona & Kingsley, Lebanon, and Charles Boardman, Bend, for the petition.

David M. Spiegel and Spiegel and Spiegel, Portland, contra.

HOLMAN, J.

This was a dispute over the ownership of a house and lot. The trial court awarded title to plantiffs. This court awarded title to defendants. Plaintiffs filed a petition for rehearing, not upon the merits, but for the purpose of having the matter referred back to the trial court for the taking of testimony so that plaintiffs can be given credit for (1) improvements, (2) taxes, and (3) payments made on a mortgage to which the litigated interests of both parties were subject. These payments are claimed to have occurred between the time plaintiffs agreed to purchase the property from a third person (May of 1963) and the present time.

The defendants' position is that any payments made by plaintiffs were either before plaintiffs had secured any title check or after plaintiffs had notice

of a possible defective title and therefore were made at plaintiffs' risk.

■ Credit should be allowed plaintiffs for any payments of taxes or principal and interest upon the first mortgage. These payments had to be made to protect the litigated interests of both parties. Defendants would have had to pay them had plaintiffs not done so. If plaintiffs have been delinquent in any mortgage payments and additional interest has accrued because of this, plaintiffs should not be given credit for such additional interest paid by them.

■ Credit should be allowed for any permanent improvements made upon the premises by plaintiffs which were made prior to the time they learned there was a possible title defect. Improvements made after they learned of a title defect were made at their own risk. No allowance should be made for cleaning the premises.

■■ Defendants acquired the outstanding interest of the trustee in bankruptcy September 23, 1963, and this was the basis for this court's decision that title rests with defendants. Plaintiffs have had the use of the property since that time. The reasonable rental value of the property from September 23, 1963, should be offset against any credit to which plaintiffs are entitled. If the reasonable rental value is greater than the credit, judgment in favor of defendants should be entered for the surplus. If plaintiffs are entitled to a net credit, it should be made a lien upon the property.

This court's decision on the merits is modified to the extent that the matter is referred to the trial court for the purpose of adjusting the equities of the parties in accordance with the foregoing.