Argued September 15, 1970, affirmed February 18, 1971

WILLIS ET UX, *Respondents, v.*
STAGER ET AL, *Appellants.*
481 P2d 78

*Steve Anderson*, Salem, argued the cause and filed briefs for appellants.

*William B. Wyllie*, Salem, argued the cause for respondents. With him on the brief were Williams, Skopil, Miller, Beck & Wyllie, Salem.

Before O'CONNELL, Chief Justice, and DENECKE, HOWELL and TONGUE, Justices.

TONGUE, J.

This is a suit to quiet title brought by the holders of an unrecorded deed against the holders of a subsequent deed from the same grantor. Plaintiff had also failed to pay any real property taxes on the property involved, resulting in a tax foreclosure decree. Defendants paid such taxes on the day before expiration of the one-year redemption period.

Defendants appeal from a decree quieting title in plaintiffs, subject to a lien in favor of defendants for the amounts paid by them for their deed and for delinquent property taxes, with interest. In urging reversal of that decree defendants contend that the trial court erred (1) In failing to hold that defendants were bona fide purchasers, without notice or knowledge of plaintiffs' deed; (2) In failing to consider the effect of the tax foreclosure, under which plaintiffs

would have lost all interest in the property; and (3) In failing to hold that plaintiffs' claim was barred by laches and estoppel for failure to record their deed and for failure to pay taxes on the property. The facts of the case are important in considering all three contentions.

On February 1, 1960, plaintiffs entered into an installment contract with William H. and Hazel B. Lemire for purchase of a 4.8 acre tract of unimproved land north of Salem. A deed to plaintiffs was executed on the same date and placed in escrow with a bank for delivery upon completion of payments to the bank in the total sum of $1,200. The record does not show the name of the realtor involved, if any. On October 11, 1961, payments were completed and the deed was delivered to plaintiffs, but was not recorded.

Plaintiff Oliver M. Willis, an insurance salesman, testified that he relied on the bank to do "what was necessary to be done" and did not know that he should have recorded the deed, although he had purchased some property before. He offered no explanation why the real property taxes were not paid other than that bills such as tax bills were paid by his wife, who did not testify. On April 28, 1965, a tax foreclosure decree was entered for failure to pay real property taxes for the years 1960-61, 1961-62, 1962-63 and 1963-64.

Defendant Alma G. Stager, the wife and secretary of defendant Floyd Stager, a Salem attorney, made a practice of examining tax records for property about to be foreclosed for delinquent real property taxes. In March 1966, she became interested in this property. The redemption period for payment of the delinquent taxes expired on April 28, 1966. Thus, she had over four weeks to investigate the title to the property.

Upon checking the deed records Mrs. Stager found that Hazel B. Lemire was the record owner of the property. She then traced Mrs. Lemire to North Dakota and called her there by telephone. Mrs. Lemire told her that although "they had owned quite a large amount of property, * * * she thought that she had sold all the property they had in Oregon," but would check with her son. On Saturday morning, April 23, 1966, Mrs. Lemire called back and told Mrs. Stager that "they had turned all the property over to a realtor in Salem to be sold," and gave her the name of the realtor.

On the same Saturday morning Mrs. Stager called the realtor (whose name she could not remember at the time of trial) and found that he was not at his office, but was at home getting ready to go fishing. The realtor told Mrs. Stager that he had sold the property, and said that he had sold it "to a certain man in Salem." She then called that man, who said that he had purchased property from Mrs. Lemire, but not in that location.

By then Mrs. Stager had also talked with the purchasers of other property from Mrs. Lemire and had apparently checked the tax records, as well as the deed records, and had been unable to find the name of any owner other than Mrs. Lemire. She and her husband also drove by the property, which they found to be overgrown with brush, and inquired of one neighbor without success. They also saw no signs posted on the property with the name or telephone number of the owner. (Plaintiffs testified that such signs had been posted on the property in 1965.)

On that same Saturday, and without waiting to check again with the realtor at his office, where further records might have been available, Mrs. Stager

again called Mrs. Lemire and "told her it looked as though there had been a piece of property that had been missed in selling." Her husband then prepared a deed, which was mailed to Mrs. Lemire. On the same day she also sent $650 to Mrs. Lemire by telegram. At that time the property had an assessed value of $2,560, with approximately $230 in delinquent taxes, with interest. The assessed value later was increased to $5,260 by the time of trial in September 1969.

On the following Monday, April 25, 1966, the deed was executed by Mrs. Lemire and was mailed back to Mrs. Stager. On Wednesday, April 27, 1966, the delinquent real property taxes and interest were paid and a "Sheriff's Certificate of Redemption" was issued to F. P. Stager, who apparently made that payment. On the following day, April 28, 1966, the one-year redemption period for payment of such taxes would have expired. One day later, on April 29, 1966, the deed from Mrs. Lemire to Mrs. Stager was recorded. Five weeks later, on June 3, 1966, Mrs. Stager conveyed an undivided one-half interest in the property to her husband, Floyd Stager. On the same date that deed was also recorded.

Plaintiffs did not record their previous deed until May 3, 1968, and then offered to reimburse defendants for the payments made by them, in return for a further deed. On defendants' refusal to do so plaintiffs filed this suit to quiet title.

*Defendants were not bona fide purchasers.*

■ ORS 93.640 (1) provides:

"Every conveyance affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent

purchaser of the same real property, or any portion thereof, in good faith and for a valuable consideration whose conveyance is first filed for record, * * *"

Findings of fact were made by the trial court that defendants "were aware of sufficient facts * * * to cause any reasonable person of comparable experience * * * to believe that she (Hazel B. Lemire) did not own the property" and that defendants were not bona fide purchasers. We agree.

It may be that the possession of the property by plaintiffs was not sufficiently open and visible so as to give constructive notice of their claim of ownership. Cf *Belcher v. La Grande Nat. Bank*, 87 Or 665, 171 P 410 (1918), and *Chaffin v. Solomon*, 255 Or 141, 465 P2d 217 (1970). But in this case defendants had actual notice from the record owner that she did not claim to be the owner and understood that she had previously sold all of her interest in the property.

As stated in Merrill on Notice 78, § 71 (1952):

"Clearly a statement by a grantor or mortgagor that the property is subject to an outstanding claim should be heeded. Similar credence should be given to a disclaimer of title by a grantor, or to any statement by the person with whom one is dealing concerning the business at hand. It is not necessary generally that the statement should refer to a particular claim, although there are some cases imposing such a requirement."

and later, at p 82:

"Many decisions hold that information of the existence of some sort of a claim to land constitutes notice though there is no specification of the nature of the claim."

To the same effect, see 8 Thompson on Real Property 415, 422, 458, §§ 4321, 4323, 4326.

In *Belt v. Matson*, 120 Or 313, 252 P 80 (1927), Moore made a contract to sell to Thompson all the timber on his land, to be removed in five years. Thompson paid the full purchase price, but did not record the contract. Moore later sold the land to plaintiff by a deed which reserved to Moore the timber and provided that such timber as was not removed within five years would "go with the said place." Plaintiff admitted that Moore told him that the timber had been sold, but testified that Moore did not mention the name of the purchaser. Plaintiff did not, however, inquire further by insisting upon production of the previous contract for examination. Instead, he proceeded with the purchase of the land on the assumption that the previous contract was a mere license, revocable at the pleasure of Moore, and that the sale of the land to him would revoke such a license to cut and remove the timber.

This court rejected that contention and held, at p 324:

"\* \* \* the law is well settled in this state that the plaintiffs having been informed that the timber had been sold and that a contract existed, though unrecorded, evidencing this sale of the timber, the plaintiffs are charged with knowledge of the contents of that contract, unless they could show that such knowledge could not have been acquired by reasonable diligence."

See also *Paris v. Smith*, 224 Or 95, 98, 355 P2d 635 (1960), and Merrill, *supra*, 423-4, § 461.①

---

① Defendants cite Schroeder et ux v. Toedtmeier et al, 184 Or 561, 582, 200 P2d 606 (1948), as holding that "all that is required of a party who is put on inquiry is good faith and reasonable care in following up the inquiry." In that case, however, as in this case, defendants failed to sustain the burden of proving that they had discharged that duty.

In this case defendants were told by Mrs. Lemire that she had sold all of her property in Oregon and were given the name of the realtor who did so on her behalf. That information constituted actual notice of a disclaimer of title by Mrs. Lemire. In addition, that information imposed upon defendants the duty to make a diligent inquiry to either determine the name of the actual owner or to show that his name could not have been discovered by reasonable diligence. That duty was not discharged by a single telephone call to the broker at his home, without office records, as he was preparing to go fishing on a Saturday morning.

It may be true that little time remained before the expiration of the period for redemption by payment of the delinquent real property taxes. But that fact alone did not excuse defendants from the performance of their duty to make further inquiry, particularly since they had by then been interested in the property for more than three weeks. Defendants also offered no evidence to show that such a further inquiry of the realtor at his office would have been fruitless and would not have disclosed plaintiffs' name as the purchaser of the property.

Thus, the trial court was correct in finding that defendants did not sustain the burden of proof to establish that they were bona fide purchasers, as alleged by them as an affirmative defense.

*Defendants cannot claim the benefit of the tax foreclosure.*

■ ORS 312.120 (2) provides that:

"During the one year period any person having an interest in the property at the date of the judgment and decree of foreclosure, or any heir or devisee of such person, * * * may redeem the

property by payment of the full amount applicable to the property under the judgment and decree, with interest thereon as provided by law, plus a penalty of two percent of the total amount applicable to the property under the judgment and decree * * *"

Thus, under ORS 312.120 (2), in order to redeem property following the entry of a tax foreclosure decree one must have an "interest" in the property. Conversely, payment of taxes by one who has no interest in the property redounds to the benefit of the owner of the property. *Johnson v. Stein*, 6 NY 2d 413, 189 NY S2d 915, 160 NE2d 659, 662 (1950) ; *Ferguson v. Fields*, 208 Ark 839, 188 SW2d 302, 304 (1945).

If defendants had been bona fide purchasers upon receiving the deed from Mrs. Lemire they might have acquired her interest in the property so as to entitle them to pay the delinquent taxes and to claim the benefit of the tax foreclosure of plaintiffs' interest in the property. It is well established, however, that one who is not a bona fide purchaser for value can acquire no greater interest in property than the interest, if any, which the grantor had to convey and thus take subject to the rights of third persons, at least in the absence of estoppel or statute to the contrary, and that such a purchaser will be protected only to the extent of payments made prior to notice. See *Sequin et al v. Maloney-Chambers Lumber Company*, 198 Or 272, 285-6, 253 P2d 252, 256 P2d 514 (1953). Cf. *Scott v. Nygaard*, 241 Or 347, 403 P2d 15, 405 P2d 850 (1965). See also *McGill v. Shugarts*, 58 Wash 2d 203, 361 P2d 645, 646 (1961), and *Pellerito v. Weber*, 22 Mich App 242, 177 NW2d 236, 237 (1970).

Thus, in the absence of estoppel, since Mrs. Lemire had no remaining interest in the property, it

follows that defendants, not being bona fide purchasers for value, acquired no interest in the property as to entitle them to pay the delinquent taxes and claim the benefit of the tax foreclosure of plaintiffs' interest in the property.

For the same reasons, it follows that the trial court did not err in "failing to give effect to the tax foreclosure" in the manner claimed by defendants, but that on the contrary, payment of the delinquent taxes by defendants had the effect of clearing the tax foreclosure from the title to the property for the benefit of plaintiffs, as the owners of such property.[2]

*Plaintiffs' claim not barred by laches or estoppel.*

■ First of all, there is a serious question whether the defense of laches has any possible application under the facts and circumstances of this case. Assuming, however, that laches may be a defense in such a case, it is well established that in order to constitute laches it is not sufficient to show that there was a prolonged delay, but there must have been full knowledge of all of the facts, concurring with a delay for an unreasonable length of time, and laches does not start to run until such knowledge is shown to exist. *Wills v. Nehalem Coal Co.,* 52 Or 70, 89, 96 P 528 (1908); *Kelly v. Tracy,* 209 Or 153, 172, 305 P2d 411 (1956). In addition, the delay must result in substan-

---

[2] The only authorities cited by defendants to the contrary consist of statutes and cases recognizing the duty of the owner of property to pay such taxes and to keep the tax collector informed of his name and address (ORS 312.216; ORS 312.120; ORS 311.555 and Hood River County v. Dabney, 246 Or 14, 28, 423 P2d 954 (1967)). While it may be true that if plaintiffs had performed such duties defendants would not have paid the taxes, it does not follow that defendants had an "interest in the property," so as to entitle them to make such a payment.

tial prejudice to the defendant to the extent that it would be inequitable to afford the relief sought against the party asserting laches as a defense. *Dahlhammer and Roelfs v. Schneider Exec.*, 197 Or 478, 498, 252 P2d 807 (1953); *Hanns v. Hanns*, 246 Or 282, 305, 423 P2d 499 (1967). Thus, the doctrine of laches is not an inflexible rule, but its application depends upon the particular circumstances of each case. *McIver v. Norman*, 187 Or 516, 544, 205 P2d 137, 213 P2d 144 (1949).[9]

■ In this case, defendants failed to show when plaintiffs first acquired a full knowledge of all of the facts relating to failure to have their deed recorded and their duty to see that it was recorded. Furthermore, since the trial court provided by its decree that defendants have a lien for the amounts paid by them for their deed and for delinquent taxes, they have not shown that they will suffer any substantial prejudice or that inequity or injustice to them will result, other than loss of anticipated profits on the transaction.

■■ As for estoppel, it is well established that there can be no estoppel unless there was not only reliance, but a right of reliance, and that reliance is not justified where a party has knowledge to the contrary of the fact or representation allegedly relied upon. *Bradford v. Western Oldsmobile*, 222 Or 440, 452, 353 P2d 232 (1960). Thus, in order to establish an estoppel by failure to disclose a claim of title to real property, it must be shown that the party claiming the estoppel had no knowledge, actual or constructive,

---

[9] The maxim that "equity ministers to the diligent and not to the negligent," as stated by plaintiffs, quoting from Churchill v. Meade, 92 Or 626, 637, 182 P 368 (1919), is an even less "inflexible rule" and that case is not in point on its facts.

of the real condition of the title to the property in question. 50 ALR 725 (Anno)[④]

■ In other words, a purchaser who is not a bona fide purchaser as the result of notice of defective title, as in this case, has no right to rely upon the failure of the owner of the property to either record his deed or to pay real property taxes.

Thus, in *Fidelity Lumber Co. v. Adams*, 230 SW 177, 179 (Tex Civ App 1921), it was held in a suit to quiet title that the fact that defendant paid the taxes and that plaintiff did not record his deed and paid no taxes did not raise an estoppel against him where the defendants were not bona fide purchasers. See also *Earnest v. First National Bank*, 56 ND 309, 217 NW 169, 171 (1927); *Boston & A.R.R. Co. v. Reardon*, 226 Mass 286, 115 NE 408, 411 (1917); and *Wright v. Webb*, 188 Ky 170, 221 SW 510, 511 (1920). Defendants have cited no cases to the contrary.

For all of these reasons we hold that there was ample evidence to support the findings of the trial court in this case and that the trial court did not err in holding that plaintiffs were entitled to a decree quieting their title to the property, subject to a lien in favor of defendants for the amounts paid by them. There may be some question whether that lien should not have been limited by the trial court to the amounts paid by defendants for delinquent taxes and should not have included the $650 paid by defendants for their deed, since they were not bona fide purchasers. That question, however, was not raised by

---

[④] Defendant quotes from 50 ALR at p 409 to the effect that in such a case the rights of "innocent parties" will be protected. One who is not a bona fide purchaser, however, as in this case, can hardly claim to be an "innocent party."

either party on this appeal. Thus, our decision affirming the decree of the trial court is not to be taken as a decision upon the merits of that question.

Under the circumstances, however, no costs will be allowed to either party on this appeal.

Affirmed.

HOWELL, J. specially concurring.

I concur in the result of the foregoing opinion and in all other aspects, except that I do not believe that the doctrine of laches could, under any circumstances, be applicable to the plaintiffs in this case.